Patsy CRISCI, Richard Clarkin, and John Pilliterri, Individually and on Behalf of All Others Similarly Situated, Plaintiffs,

v.

Donna E. SHALALA, in Her Capacity as Secretary of the Department of Health and Human Services, Irwin Bernstein, in His Capacity as Chief Regional Administrative Law Judge, Region II, Helen Anyel, in Her Capacity as Administrative Law Judge, and Ben L. Erdreich, in His Capacity as Chairman, Merit Systems Protection Board, Defendants.

No. 95 Civ. 5269.

United States District Court, S.D. New York.

Dec. 18, 1996.

Brown & Seymour, Craig A. Landy, New York City (Whitney North Seymour, Jr., of counsel), for Plaintiffs.

United States Attorney for the Southern District of New York, New York City (Mary Jo White, United States Attorney, Linda A. Riffkin, of counsel), for Defendants.

## OPINION

ROBERT J. WARD, District Judge.

Defendants Donna E. Shalala, Secretary of the Department of Health and Human Services ("the Secretary"), Irwin Bernstein, Chief Regional Administrative Law Judge ("ALJ Bernstein"), Helen Anyel, Administrative Law Judge ("ALJ Anyel"), and Ben L. Erdreich, Chairman of the Merit Systems Protection Board ("Chairman Erdreich") ("defendants") have moved pursuant to Rules 12(b)(1) and (b)(6), Fed.R.Civ.P., for an order dismissing plaintiffs' complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Plaintiffs have moved, pursuant to Rule 23, Fed.R.Civ.P., for an order certifying this action as a class action on behalf of all Medicare Part B claimants whose claims have been, from January 1, 1995 to the present, or will be, assigned to ALJ Anyel for hearing and decision. For the reasons hereinafter stated, defendants' motion to dismiss is denied, and plaintiffs' motion for class certification is granted.

## BACKGROUND

Individuals who are entitled to insurance benefits under Title II of the Social Security Act are eligible for federal reimbursement of certain health care expenses through the Medicare Program. 42 U.S.C. § 1395c. Under Part B of the Medicare Program, the federal government provides partial financing to voluntary enrollees for the costs of physicians' services, out-patient hospital care and therapy, and diagnostic tests. 42 U.S.C. §§ 1395j–w. In order to obtain benefits under Part B, the claimant must submit a claim to one of the private insurance carriers who administer the program under a contract with the Secretary.

If the claimant is dissatisfied with the carrier's calculation of the amount of benefits payable, and the amount in dispute exceeds $100, the claimant may request a fair hearing before an impartial hearing officer. The claimant may appeal a fair hearing decision to an administrative law judge if the amount in controversy is not less than $500. If the amount in dispute is at least $1,000, the claimant may seek Appeals Council review of an administrative law judge's decision. Finally, the claimant is entitled to seek judicial review in federal court of an Appeals Council decision if the amount in controversy is at least $1,000.

Plaintiffs, on behalf of all claimants for Medicare Part B benefits whose claims have been, from January 1, 1995 to the present, or will be, assigned to ALJ Anyel for hearing and decision, allege that ALJ Anyel is biased against Social Security claimants and lacks the temperament, impartiality, and ability to decide cases fairly. According to plaintiffs, ALJ Anyel's unwillingness to follow and apply the law deprives claimants of the right to have their claims fairly considered in violation of the Social Security Act and the due process clause of the Fifth Amendment to the United States Constitution.

In support of their contentions, plaintiffs allege that ALJ Anyel has routinely forced unrepresented claimants to proceed *pro se,* even those who wished to obtain counsel; that she has been reversed several times for failing to develop adequately the record in cases involving *pro se* claimants; that she

has failed to follow specific directions from reviewing courts; and that she has been openly hostile, intimidating and verbally abusive to claimants and their representatives. Additionally, plaintiffs cite to this Court's decision finding that a class of individuals whose claims for Social Security or supplemental security income benefits ("SSI") were denied by ALJ Anyel adequately alleged that ALJ Anyel's biased conduct deprived them of the right to a fair and impartial hearing. *Kendrick v. Sullivan,* 784 F.Supp. 94 (S.D.N.Y.1992).

On May 15, 1991, the Social Security Administration ("SSA") Office of Hearing and Appeals ("OHA") filed a complaint with the Merit Systems Protection Board ("MSPB") seeking to remove ALJ Anyel. The complaint alleged that ALJ Anyel (1) failed to demonstrate an acceptable level of professional competence, legal knowledge, and informed judgment in the performance of her adjudicative functions, and (2) failed to extend adequately to *pro se* claimants the right to representation during hearings held before her. *See SSA OHA v. Anyel,* No. CB–7521–91–0009–B–1, Recommended Decision, Sept. 16, 1994, at 1. Following the recommended decision of Chief Administrative Law Judge Paul G. Strab, the MSPB approved a settlement agreement between OHA and ALJ Anyel on January 24, 1995. *SSA OHA v. Anyel,* 66 M.S.P.R. 328 (1995). The settlement agreement provided in relevant part: (1) that ALJ Anyel would be suspended for ninety days; (2) that, following her term of suspension, ALJ Anyel would receive one month of retraining in Social Security and Medicare law, and in the due process rights of claimants in administrative hearings; and (3) that, for at least one year following her term of suspension, ALJ Anyel would be prohibited from hearing cases under Titles II and XVI of the Social Security Act requiring the disposition of issues involving entitlement to disability benefits or SSI benefits. Under the settlement agreement, ALJ Anyel is not barred from hearing and deciding Medicare Part B claims.

ALJ Anyel returned to work on May 22, 1995. On June 22, 1995, ALJ Anyel sent notices to the named plaintiffs that their

Medicare Part B claims had been assigned to her, and that she would conduct hearings on those claims on July 27, 1995. Plaintiffs filed the present action on July 14, 1995. On July 27, 1995, it was Chief Administrative Law Judge Newton Greenberg ("Chief ALJ Greenberg") rather than ALJ Anyel who heard the named plaintiffs' claims. Plaintiffs allegedly received neither prior notice that their cases had been transferred to Chief ALJ Greenberg, nor an explanation for the transfer.

Defendants now request dismissal of plaintiffs' complaint. Plaintiffs seek to have this action certified as a class action. The Court will address these applications in turn.

## DISCUSSION

### I. *Defendants' Motion to Dismiss*

Defendants base their motion to dismiss on the grounds of mootness and lack of subject matter jurisdiction. This Court first will discuss the mootness issue, and then will consider whether it has subject matter jurisdiction to hear plaintiffs' claims.

### A. *Mootness*

Defendants argue that because ALJ Anyel did not hold the July 27, 1995 hearings on the named plaintiffs' Medicare Part B claims, the named plaintiffs will not suffer the injury they allege in their complaint. According to defendants, because no actual controversy exists, and because plaintiffs' claims are not capable of repetition, yet evading review, this action should be dismissed as moot.

Under the "case or controversy" requirement of Article III of the Constitution, a court must have before it a genuine dispute. *McCoy v. Ithaca Housing Auth.,* 559 F.Supp. 1351, 1353 (N.D.N.Y.1983). Generally, a case will become moot if "the plaintiff's personal stake in the litigation [does not] continue throughout the entirety of the litigation." *Sosna v. Iowa,* 419 U.S. 393, 402, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975). In the context of a class action, however, the Supreme Court has adopted a "flexible" approach to the mootness doctrine, recognizing that

there may be cases in which the controversy involving the named plaintiffs is such that it becomes moot as to them before the district court can reasonably be expected to rule on a certification motion. In such instances, whether the certification can be said to "relate back" to the filing of the complaint may depend upon the circumstances of the particular case ...

*Id.* at 402 n. 11, 95 S.Ct. at 559 n. 11. Under this approach, where a named plaintiff's claim has become moot, class certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy. *See Comer v. Cisneros,* 37 F.3d 775, 798–99 (2d Cir.1994); *Robidoux v. Celani,* 987 F.2d 931, 939 (2d Cir.1993).

Courts generally apply the relation back doctrine to permit class representation by individuals whose claims have become moot after the filing of a motion for class certification but before resolution of that motion. *See, e.g., White v. Mathews,* 559 F.2d 852, 857 (2d Cir.1977), *cert. denied sub nom., Califano v. White,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978); *Kendrick v. Sullivan,* 784 F.Supp. 94, 104 n. 5 (S.D.N.Y. 1992); *Mathis v. Bess,* 138 F.R.D. 390, 392 (S.D.N.Y.1991); *Jane B. ex rel. Martin v. New York City Dep't of Soc. Servs,* 117 F.R.D. 64, 67–69 (S.D.N.Y.1987). Relation back is also appropriate where, as here, the claims of the named plaintiff have become moot before a motion for class certification is filed "so long as a justiciable controversy existed some time prior to class certification." *Goetz v. Crosson,* 728 F.Supp. 995, 1000 n. 8 (S.D.N.Y.1990); *see also German ex rel. German v. Federal Home Loan Mortgage Corp.,* 896 F.Supp. 1385, 1399 (S.D.N.Y. 1995) (plaintiffs whose claims became moot prior to filing of class certification motion not improper class representatives); *McCoy,* 559 F.Supp. at 1354 (where plaintiff's claim became moot after filing of complaint but unnamed class members still existed, continuation of action was proper); *Bacon v. Toia,* 437 F.Supp. 1371, 1382 (S.D.N.Y.1977), *aff'd,* 580 F.2d 1044 (2d Cir.1978) (mootness claim extinguished by motion for class certification where real and immediate controversy existed at time of filing of complaint).

■ The circumstances of the instant case warrant the relation back of class certification to the filing of the complaint. In their complaint, the named plaintiffs alleged a substantial controversy regarding the conduct of ALJ Anyel. While defendants' subsequent transfer of the named plaintiffs' cases effectively mooted their individual claims, there is no evidence to suggest that "the interest and ability of the named plaintiffs was ... significantly different [when the complaint was filed] than it was shortly thereafter when the [instant] class certification motion was filed." *German*, 896 F.Supp. at 1399 n. 3. Nor will class representation be inadequate simply because the named plaintiffs no longer have a live controversy. *See White*, 559 F.2d at 857. Plaintiffs' attorneys are experienced in litigating challenges to Medicare practices, and no conflict of interest exists between the named plaintiffs and the class that they represent. There is thus no reason at this point to doubt that the claims of unnamed plaintiffs will be pursued with the appropriate vigor.

The fact that a live controversy still exists as to unnamed members of the class further indicates that relation back is appropriate in this case. *See Gerstein v. Pugh*, 420 U.S. 103, 111 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975) (relation back is appropriately applied where the constant existence of a class of persons suffering the deprivation is certain); *see also White*, 559 F.2d at 857; *Mathis*, 138 F.R.D. at 392–93; *Jane B.*, 117 F.R.D. at 68. Under the terms of the settlement agreement between OHA and ALJ Anyel, ALJ Anyel has returned to duty and is currently being assigned Medicare Part B claims for hearing and decision. Therefore, a class of Medicare Part B claimants subject to ALJ Anyel's allegedly biased conduct does and will continue to exist.

Moreover, this Court must consider the potential ability of defendants to "purposefully moot the named plaintiffs' claims after the class action complaint has been filed but before the class has been properly certified." *Goetz*, 728 F.Supp. at 1000. Defendants have the power to transfer the case of every Medicare Part B claimant named as a class representative. A determination that "the plaintiffs' claims were now moot would mean that [defendants] could avoid judicial scrutiny of [ALJ Anyel's conduct] by the simple expedient of granting [transfers] to plaintiffs who seek, but have not yet obtained, class certification." *Goetz*, 728 F.Supp. at 1000 (citing *White*, 559 F.2d at 857). The issue of ALJ Anyel's allegedly biased conduct thus would evade review if class certification were not deemed to relate back to the filing of the complaint. *Bacon*, 437 F.Supp. at 1383. Under these circumstances, this Court finds that application of the relation back doctrine is warranted. *See White*, 559 F.2d at 857 (relation back doctrine applied in action challenging delays by the SSA in disability insurance hearings so that the SSA could not avoid judicial scrutiny of its procedures by granting hearings to named plaintiffs before class certification); *Mathis*, 138 F.R.D. at 392–93 (representative of incarcerated indigent defendant class challenging delayed appeals deemed proper after his appeal was decided because defendants had power to moot claims by expediting decision of individual appeals); *Goetz*, 728 F.Supp. at 1000–01 (because grant of named plaintiff's request for appointment of psychiatrist "could be construed as an attempt to squelch a spark before it turns into a conflagration," relation back doctrine necessary to ensure justiciable class action claim heard); *Bacon*, 437 F.Supp. at 1383 (class certification relates back where defendant could create mootness by agreeing to pay benefits sought by plaintiff every time action was instituted). Consequently, defendants' motion to dismiss on the ground of mootness fails.

### B. *Lack of Subject Matter Jurisdiction*

Defendants next argue that dismissal of the action is warranted on the ground that this Court lacks subject matter jurisdiction over plaintiffs' claims. Specifically, defendants contend that plaintiffs are precluded under 42 U.S.C. § 405(g) from seeking judicial review of their claims.

As set forth in 42 U.S.C. § 1395ff(b)(1), § 405(g) governs judicial review of decisions regarding Medicare Part B claims. Section 405(g) provides in relevant part:

Any individual, after any final decision of the Secretary made after a hearing to

which he was a party ... may obtain a review of such determination by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

42 U.S.C. § 405(g). Section 1395ff(b)(2) further limits judicial review to cases in which the amount in controversy is at least $1,000. Thus, judicial review of the denial of a Medicare Part B claim is available only if the amount in controversy is at least $1,000, and only after a final decision following a hearing. *See Mathews v. Eldridge*, 424 U.S. 319, 328, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976).

■ The final decision requirement of § 405(g) contains two elements: a jurisdictional, non-waivable requirement that a claim for benefits has been presented to the Secretary, and a prudential, waivable requirement that the administrative remedies prescribed by the Secretary have been exhausted. *Bowen v. City of New York*, 476 U.S. 467, 482–83, 106 S.Ct. 2022, 2030–32, 90 L.Ed.2d 462 (1986) (citing *Eldridge*, 424 U.S. at 328, 96 S.Ct. at 899). Defendants contend that because plaintiffs failed to exhaust their administrative remedies before bringing this action, the second component of the final decision requirement has not been met.[1]

■ While the Secretary ordinarily has discretion to decide when to waive the exhaustion requirement, the court also has the power to waive this requirement in appropriate circumstances. *Bowen*, 476 U.S. at 483, 106 S.Ct. at 2031–32; *Eldridge*, 424 U.S. at 330, 96 S.Ct. at 900. Judicial waiver is proper where plaintiffs' legal claims are collateral to the demand for benefits, exhaustion of remedies would be futile, and enforcement of the exhaustion requirement would cause plaintiffs irreparable injury. *Kendrick v. Sullivan*, 784 F.Supp. 94, 99 (S.D.N.Y.1992) (citing *State of New York v. Sullivan*, 906

F.2d 910, 918 (2d Cir.1990)). While each of these factors is relevant to the court's determination, a "'general approach, balancing the competing considerations to arrive at a just result, is in order.'" *Kendrick*, 784 F.Supp. at 100 (quoting *Sullivan*, 906 F.2d at 918).

■ In the instant case, plaintiffs' claim that ALJ Anyel's bias against Medicare Part B claimants deprives them of their right to an impartial hearing is collateral to any substantive claim for benefits that plaintiffs raised or will raise at the administrative level. This conclusion is supported by several cases, including one decided by this Court, finding that plaintiffs' claims regarding a generally biased ALJ were sufficiently collateral to their demands for benefits to support waiver of the exhaustion requirement. *See Kendrick*, 784 F.Supp. at 100; *Small v. Sullivan*, 820 F.Supp. 1098, 1105 (S.D.Ill.1992); *Grant v. Sullivan*, 720 F.Supp. 462, 473 (M.D.Pa.1989).

Moreover, the fact that the procedures governing hearings on Medicare Part B claims "are not designed to address the problem of an administrative law judge who is generally biased against claimants," suggests that requiring plaintiffs to exhaust their administrative remedies would be futile. *Kendrick*, 784 F.Supp. at 100. The relevant regulations do not provide for the type of prehearing discovery that would be necessary to develop the factual support for a claim of generalized bias at the administrative level. *Id.* In addition, the regulation regarding disqualification of administrative law judges does not apply to situations of general bias.[2] *Id.* The lack of an effective mechanism for pursuing a claim of general bias during the administrative appeals process thus supports waiver of the exhaustion requirement here.

---

1. Defendants do not dispute that plaintiffs have met the presentment component of the final decision requirement. This condition is satisfied when an application for benefits is made to the Secretary. *Mental Health Assoc. of Minn. v. Heckler*, 720 F.2d 965, 969 (8th Cir.1983). The proposed class consists of claimants whose applications for benefits have been or will be assigned to ALJ Anyel for hearing and decision. This is sufficient to meet the presentment requirement of § 405(g).

2. Indeed, before commencement of this action, plaintiffs' representatives requested that ALJ Anyel disqualify herself on the ground of her general bias against Medicare Part B claimants. ALJ Anyel denied each request to recuse.

Finally, the potential harm that plaintiffs would suffer if required to exhaust their administrative remedies is substantial. As this Court noted in *Kendrick*,

> many claimants ... are unrepresented and fail to appeal or make technical mistakes in pursuing their appeals which prevent their appeals from being considered on the merits. Furthermore, even when claimants pursue appeals, ... it may take months or years to obtain relief from an adverse decision, during which time the claimants are obliged to subsist without benefits.

*Id.* at 100. The fact that plaintiffs in this case are Medicare beneficiaries and thus may not be suffering from the same debilitating conditions as were the disability claimants in *Kendrick* does not persuade this Court that waiver is any less appropriate here. Where the health of claimants is at stake, and "where the Government seeks to require claimants to exhaust administrative remedies merely to enable them to receive the procedure they should have been afforded in the first place," a court "should be especially sensitive to this kind of harm." *Bowen*, 476 U.S. at 484, 106 S.Ct. at 2032. The possible harm plaintiffs would suffer if required to exhaust their administrative remedies thus provides further support for waiver in this case.

Based on a consideration of all of the factors relevant to the waiver determination, this Court finds that plaintiffs' failure to exhaust their administrative remedies does not preclude them from seeking judicial review of their bias claims under § 405(g). Because subject matter jurisdiction over plaintiffs' claims is properly found under this section, it is unnecessary to address defendants' argument that mandamus jurisdiction under 28 U.S.C. § 1361 is not available here.

## II. *Plaintiffs' Motion for Class Certification*

Plaintiffs have moved pursuant to Rule 23, Fed.R.Civ.P., for an order certifying this action as a class action. Plaintiffs define the class as:

> [a]ll Medicare Part B claimants whose claims have been, from January 1, 1995 to the present, or will be, assigned to ALJ Anyel for hearing and decision.

Plaintiffs' Notice of Motion for Class Certification at 2.

■ Initially, defendants argue that this definition is not sufficiently specific to identify a class. First, defendants contend that the proposed class definition fails to state who is a member of the class. According to defendants, it is not clear whether the class includes: claimants who receive favorable hearing decisions from ALJ Anyel; claimants who obtain unfavorable hearing decisions from ALJ Anyel and then fail to exhaust their administrative remedies with respect to those decisions; and claimants who seek judicial review of their claim, where ALJ Anyel's denial of the claim was upheld by the court. This Court disagrees with defendants' argument. The proposed class necessarily includes claimants who receive favorable hearing decisions from ALJ Anyel, as beneficiaries who are liable to have future claims and who thus have an interest in the future relief sought by plaintiffs. Similarly, claimants who have not exhausted their administrative remedies are properly included within the class, as explained in the above discussion of subject matter jurisdiction under § 405(g). Finally, claimants who already have pursued actions in federal court on grounds other than ALJ Anyel's alleged bias are clearly entitled to participate in this action.

■ Defendants also claim that the proposed class definition is unreasonable in scope. This argument is equally unavailing. Several courts have certified classes similar to the one proposed in the instant case. *See Kendrick v. Sullivan*, 784 F.Supp. 94 (S.D.N.Y.1992); *Small v. Sullivan*, 820 F.Supp. 1098 (S.D.Ill.1992); *Grant v. Sullivan*, 720 F.Supp. 462 (M.D.Pa.1989). Indeed, the size of the proposed class is largely irrelevant except as it pertains to the numerosity requirement of Rule 23(a)(1) which is discussed below. *See Marisol A. ex rel. Forbes, Jr. v. Giuliani*, 929 F.Supp. 662, 690 (S.D.N.Y.1996). As the proposed class definition is sufficiently clear and reasonable in scope, this Court will now turn to an analysis of plaintiffs' motion under Rule 23.

A party seeking class certification has the burden of showing that the prerequisites of Rule 23 have been met. *Mathis v. Bess*, 138 F.R.D. 390, 393 (S.D.N.Y.1991) (citing *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir.1968)). In order to be eligible for class certification, plaintiffs first must demonstrate that the proposed class satisfies all four requirements of Rule 23(a). *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 290 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088 (1993). Once plaintiffs have made this showing, they then must demonstrate that the putative class action falls into one of the categories of maintainable actions under Rule 23(b). *See Brown v. Giuliani*, 158 F.R.D. 251, 269 (E.D.N.Y.1994); *Jane B. ex rel. Martin v. New York City Dep't of Social Servs*, 117 F.R.D. 64, 71 (S.D.N.Y. 1987). Plaintiffs in the instant case seek certification pursuant to Rule 23(b)(2).

### A. Rule 23(a)

Rule 23(a) provides for class certification only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

### 1. Numerosity

Defendants argue that plaintiffs are unable to provide sufficient evidence to meet the numerosity requirement of Rule 23(a)(1), which states that a class should be certified only if "the class is so numerous that joinder of all members is impracticable." Fed. R.Civ.P. 23(a)(1). Plaintiffs are not required to state the exact number of putative class members as " 'a class action may proceed upon estimates as to the size of the proposed class.' " *Jane B.*, 117 F.R.D. at 70 (citation omitted). Instead, plaintiffs must show that "due to the number of potential class members, ... the administration of a class action is more feasible than repeated interventions

by other plaintiffs." *Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y.1989). It is within this Court's discretion to "make 'common sense assumptions' to support a finding of numerosity." *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537, 552 (S.D.N.Y.1995) (citation omitted).

Defendants themselves have advised the Court that as of April 23, 1996, ALJ Anyel began holding administrative hearings in the Manhattan Hearing Office on Medicare Part B claims. Defendants' Letter to the Court dated April 19, 1996, at 1. According to defendants, only three additional administrative law judges in the New York region are to be assigned Medicare Part B claims. *Id.* at 2. While plaintiffs are unable to determine with precision the number of cases that are or will be scheduled for hearing before ALJ Anyel, plaintiffs have provided the Court with statistical evidence that in the New York region, over 1,000 administrative law judge hearing requests were pending in the months of August and September 1995. Assuming that ALJ Anyel will be assigned to hear approximately one-fourth of the Medicare Part B cases in the New York region, this statistical evidence is sufficient to support plaintiffs' contention that the numerosity requirement is satisfied.

### 2. Commonality

Under Rule 23(a)(2), plaintiffs must show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). While all issues need not be identical as to each member of the proposed class, plaintiffs must " 'identify some unifying thread among the members' claims that warrant class treatment.' " *Mathis*, 138 F.R.D. at 393 (citation omitted). The questions of law and fact that plaintiffs argue are common to all proposed class members include whether ALJ Anyel is biased against all Medicare Part B claimants and whether her conduct deprives plaintiffs of their right to a full and fair hearing.

Defendants first argue that because ALJ Anyel did not hear and will not decide the named plaintiffs' claims, these plaintiffs do not share questions of law and fact with the proposed class. As discussed earlier, the named plaintiffs alleged a substantial controversy regarding the biased conduct of ALJ

Anyel in their complaint. The fact that the named plaintiffs' claims were not ultimately heard by ALJ Anyel resulted solely from defendants' transfer of their cases after commencement of this lawsuit. For the same reason that the transfer of the named plaintiffs' cases does not moot their claims, that transfer does not defeat commonality between the named plaintiffs and the proposed class.

Defendants further contend that because each individual claimant's case turns on its specific factual circumstances and thus can be decided only on the basis of evidence adduced at a hearing, there are no common issues of fact on which to base certification. This argument "fundamentally misapprehends the nature of plaintiffs' claims." *Kendrick v. Sullivan*, 784 F.Supp. at 106. As this Court found in *Kendrick*,

> plaintiffs raise a ... general claim concerning the nature of the hearing accorded the proposed class members. Plaintiffs do not seek to prove that ALJ Anyel committed errors in one or more of her decisions but instead that she is predisposed to deny claims in each and every one of her cases.

*Id.* at 106. Whether ALJ Anyel is predisposed to deny every Medicare Part B claim is a question of fact common to the class. *Small*, 820 F.Supp. at 1110; *Grant*, 131 F.R.D. at 446. Further, whether such bias, if found to exist, deprived or will deprive the proposed class members of their right to a full and fair hearing presents a question of law common to the class. *Small*, 820 F.Supp. at 1110; *Grant*, 131 F.R.D. at 446. The plaintiffs thus have satisfied the commonality requirement of Rule 23(a)(2).

### 3. *Typicality*

■ Closely related to the commonality requirement of Rule 23(a)(2) is the typicality requirement of Rule 23(a)(3), which demands a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R.Civ.P. 23(a)(3). A proposed class satisfies this requirement if "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant[s'] liabili-

ty." *Robidoux*, 987 F.2d at 936–37. The rule is thus satisfied if the named plaintiffs' claims arise from the same practice or course of conduct that gives rise to the claims of the proposed class members. *Mathis*, 138 F.R.D. at 396.

■ Defendants contend that because the named plaintiffs' cases were ultimately heard by an administrative law judge other than ALJ Anyel, plaintiffs cannot satisfy the typicality requirement. For the same reasons discussed in the context of the commonality requirement, this argument is unpersuasive. Plaintiffs allege that defendants have assigned or will assign the Medicare Part B claims of both the named plaintiffs and class members to ALJ Anyel, that ALJ Anyel is predisposed to deny their claims, and that as a result, plaintiffs will be deprived of their right to a full and fair hearing. That defendants transferred the named plaintiffs' cases to another ALJ does not defeat the typicality of their allegations. This Court is persuaded that the interests of the prospective class members are sufficiently encompassed within the plaintiffs' claims to satisfy the typicality requirement. *See Grant v. Sullivan*, 131 F.R.D. at 446–47. The fact that plaintiffs seek declaratory and injunctive relief for the class as a whole further supports a finding that the claims of the named plaintiffs are typical of those of the proposed class in satisfaction of Rule 23(a)(3). *Marisol A.*, 929 F.Supp. at 691.

### 4. *Adequacy of Representation*

■ The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The Second Circuit has interpreted this provision to demand both that class counsel be qualified, experienced, and able to conduct the litigation, and that the proposed class members not have interests antagonistic to one another. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d at 291. Plaintiffs allege that their attorneys are experienced in the handling of health care reimbursement issues and possess specialized skills to effectively represent the proposed class. In addition, plaintiffs state that no conflict of interest

exists between the named plaintiffs and the class they represent. Defendants do not challenge either the competence of counsel or the absence of conflict of interest among class members. Based on plaintiffs' contentions and the absence of disagreement on the part of defendants, this Court is persuaded that the adequacy of representation requirement is met.

### B. *Rule 23(b)*

■ The requirements of Rule 23(a) having been satisfied, plaintiffs must show that the proposed class meets the requirements of one of the three categories set forth in Rule 23(b). Plaintiffs rely on Rule 23(b)(2) which provides for certification if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

Fed.R.Civ.P. 23(b)(2).

Plaintiffs argue that defendants' practice of assigning Medicare Part B claims to ALJ Anyel will result in the denial of full and fair hearings to all members of the class, and thus constitutes an act generally applicable to the class. Defendants do not dispute this argument. Because defendants have acted on grounds generally applicable to the proposed class, and because plaintiffs seek both injunctive and declaratory relief, this case poses the exact situation contemplated by Rule 23(b)(2).

This Court finds that plaintiffs have met all four prerequisites of Rule 23(a) and have filed an action maintainable pursuant to Rule 23(b)(2). Plaintiffs' motion to certify the class is therefore granted and the class is defined as:

> [a]ll Medicare Part B claimants whose claims have been, from January 1, 1995 to the present, or will be assigned to ALJ Anyel for hearing and decision.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss pursuant to Rules 12(b)(1) and (b)(6), Fed.R.Civ.P., is denied. Further, plaintiffs' motion for class certification pursuant to Rule 23, Fed.R.Civ.P., is granted. The parties are directed to confer and submit to the Court a joint status letter on or before January 10, 1997.

It is so ordered.